IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DEUTSCHE BANK TRUST CO., as trustee for GSAA Home Equity Trust 2006-2, <br><br> Plaintiff, <br><br> vs. <br><br> LISA SJODIN BEESLEY; BROOKS ALAN BEESLEY; FEDERAL DEPOSIT INSURANCE CORPORATION, receiver for Washington Mutual Bank; JOHN AND MARY DOES 1-20; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20, <br><br> Defendants. | CIVIL NO. 12-00067 SOM/KSC <br><br> ORDER DENYING MOTION TO DISMISS |

**ORDER DENYING MOTION TO DISMISS**

**I.     INTRODUCTION.**

On August 17, 2011, Plaintiff Deutsche Bank Trust Co., as trustee for GSAA Home Equity Trust 2006-2 ("DB-GSAA"), filed a Complaint in state court to foreclose on a mortgage securing a loan.  On February 1, 2012, Defendants Lisa and Brooks Beesley removed the action to this court.  See ECF No. 1.

On February 6, 2012, the Beesleys filed a motion to dismiss the Complaint, arguing that DB-GSAA lacked standing to bring this action because the note and mortgage were allegedly improperly assigned to it.  See ECF No. 5-1.  On April 3, 2012, the court denied that motion, ruling that the Complaint had alleged that DB-GSAA had been assigned the note and mortgage and

that the Beesleys had provided no evidence in support of their motion. See ECF No. 26.

On April 17, 2012, the Beesleys filed a new motion to dismiss the Complaint for lack of standing. See ECF No. 32. The court, having held a continued hearing and having received supplemental briefing, denies that motion.

**II.     BACKGROUND.**

On or about August 12, 2005, Lisa Sjodin Beesley obtained a loan from Argent Mortgage Company, LLC. In connection with that loan, Lisa Beesley gave Argent a $650,000 note, and Lisa and Brooks Beesley gave Argent a mortgage securing the note. This mortgage was filed in the Land Court of the State of Hawaii as Document No. 3314821 and was noted on Certificate 765,875. See ECF 1-1, PageID #20 and #23.

On or about August 20, 2007, Argent assigned the Beesleys' mortgage to Deutsche Bank Trust Company Americas formerly known as Banker's Trust Company, as Trustee and Custodian for GSAA 2006-2 ("DB-Americas"). This Assignment of Mortgage was filed in the Land Court on September 18, 2007, as Document No. 3657274 and was noted on Certificate 765,875. See ECF 1-1, PageID #40.

The assignment of August 20, 2007, to DB-Americas was purportedly signed on behalf of DB-Americas by Saxon Mortgage Services, Inc. Id. However, DB-Americas does not appear to have

appointed Saxon Mortgage Services, Inc., to be its attorney-in-fact until on or about August 21, 2007, a day after the assignment.  See Limited Power of Attorney, ECF No. 61-1.  This Limited Power of Attorney was recorded on January 23, 2009, in the State of Hawaii Bureau of Conveyances as Document No. 2009-009105 and in the Land Court as Document No. 3821809.  Id.

On or about May 28, 2009, DB-Americas assigned the note and mortgage to DB-GSAA, the Plaintiff in this action.  Bethany Hood, of Saxon Mortgage Services, Inc., formally known as Meritech Mortgage Services, Inc., executed the document as the attorney-in-fact for DB-Americas.  The Assignment of Mortgage and Note was filed in the Land Court on June 2, 2009, as Document No. 3864363 and was noted on Certificate 765,875.  See ECF 1-1, PageID #43.

The Beesleys filed a Chapter 13 bankruptcy proceeding, Case No. 08-01881 RJF in the United States Bankruptcy Court for the District of Hawaii.  See ECF No. 32-2.  On May 1, 2009, Saxon Mortgage Services, Inc., Servicing Agent for Deutsche Bank National Trust Company as Trustee for Novastar Mortgage Funding Trust Series 2007-1 ("DB-Novastar"), filed a document in the bankruptcy proceeding indicating that the Beesleys owed $30,325.78 to Saxon Mortgage, the servicing agent for DB-Novastar, for prebankruptcy debts consisting of seven missed mortgage payments, late charges, an escrow shortage, a property

inspection, and other fees and costs.  <u>In re: Brooks Alan Beesley, Lisa Sjodin Beesley</u>, Case No. 08-01881 RJF, ECF No. 29, May 1, 2009.  Saxon had earlier filed a document in the bankruptcy proceeding indicating that money was owed to it because of the August 12, 2005, $650,000 note that was secured by the mortgage given to Argent.  <u>See</u> <u>In re: Brooks Alan Beesley, Lisa Sjodin Beesley</u>, Case No. 08-01881 RJF, ECF No. 21, Mar. 26, 2009.  Some confusion flows from Saxon's reference to its status as the servicing agent for DB-Novastar, because DB-Novastar does not show up in the documents available to this court as having ever had an interest in the Beesleys' loan.

  The entity now servicing the Beesleys' loan indicates that it is "uncertain" whether DB-Novastar ever had an interest.  <u>See</u> Declaration of Shallni Maharaj ¶ 9, ECF No. 53.  However, the bankruptcy trustee's final report and account appears to reflect the Bankruptcy Court's approval of Saxon's claim of $30,325.78.  <u>See</u> <u>In re: Brooks Alan Beesley, Lisa Sjodin Beesley</u>, Case No. 08-01881 RJF, ECF No. 58, Nov. 5, 2009.  According to the docket in the bankruptcy proceeding, the Beesleys' bankruptcy case has been closed since December 2009.  <u>See</u> <u>In re: Brooks Alan Beesley, Lisa Sjodin Beesley</u>, Case No. 08-01881 RJF, ECF No. 61, Dec. 8, 2009.

  DB-GSAA had sent a letter dated January 10, 2006, to Lisa Beesley indicating that Saxon Mortgage Services, Inc., was taking over as the new servicing agent for her loan.  <u>See</u> ECF No.

4

47-1.  A subsequent letter of March 12, 2012, notified the Beesleys that the servicing agent for the loan had become Ocwen Loan Servicing, LLC.  See ECF No. 47-2.  Shallni Maharaj, the Contract Management Coordinator for Ocwen, provides timing details, explaining that Saxon serviced the Beesley's loan from January 17, 2006, through April 1, 2012, after which Ocwen took over.  Declaration of Shallni Maharaj ¶¶ 7-8, ECF No. 53.

DB-GSAA previously indicated that the "note with original signatures is currently in a vault located at the offices of Plaintiff's current servicing agent, Ocwen Loan Servicing, LLC."  See Supplemental Memorandum in Opposition to Motion to Dismiss at 6, June 28, 2012, ECF No. 47; Declaration of Shallni Maharaj ¶ 12, ECF No. 53.  Counsel for DB-GSAA subsequently indicated that the original note had been delivered to counsel.  See Declaration of Counsel ¶ 4, ECF No. 59.

**III.    STANDARD.**

Rule 12(b)(1) of the Federal Rules of Civil Procedure states: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction."

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer upon the

court subject matter jurisdiction, or attack the existence of subject matter jurisdiction in fact. Thornhill Publ'g Co. v. Gen, Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact. Thornhill, 594 F.2d at 733.

Defendants' motion to dismiss is a factual attack on this court's subject matter jurisdiction. Accordingly, the court may accept and evaluate evidence to determine whether jurisdiction exists. See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988) ("when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction"); Biotics Research Corp. v. Heckler, 710 F.2d 1375, 1379 (9th Cir. 1983) (consideration of

6

material outside the pleadings does not convert a Rule 12(b)(1) motion into a motion for summary judgment).

When the jurisdictional issue and substantive claims are "'so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment.'" Autery v. United States, 424 F.3d 944, 956 (9th Cir. 2005) (quoting Rosales v. United States, 824 F.2d 799, 803 (9th Cir. 1987)); Deutsche Bank Nat'l Trust Co. v. Williams, 2012 WL 1081174 (D. Haw. Mar. 29, 2012) (Seabright, J.). In such a case, this court may grant "the motion to dismiss for lack of jurisdiction only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Rosales, 824 F.2d at 803. "Otherwise, the intertwined jurisdictional facts must be resolved at trial by the trier of fact." Id.

**IV.    ANALYSIS.**

**A.    DB-GSAA Has Standing to Bring This Action.**

In seeking dismissal of this action, the Beesleys argue that DB-GSAA did not properly become the owner of their note and mortgage. On the present record, which includes recorded assignments of the loan, DB-GSAA has established a prima facie case of standing to enforce the loan documents. See Markham v. Markham, 80 Haw. 274, 281, 909 P.2d 602, 609 (App. 1996) (noting

7

that the "central purpose of recording a conveyance of real property is to give notice to the general public of the conveyance and to preserve the recorded instrument as evidence"). Hawaii's courts long ago held that a plaintiff that shows a "direct chain of paper title that he is the owner of land" demonstrates "prima facie evidence of their contents" and that title is vested in that plaintiff, subject to other claims such as adverse possession.  See Apana v. Kapano, 1911 WL 1761, *3 (Haw. Feb. 20, 1911).

As the owner of a recorded lien on the Beesleys' property, DB-GSAA similarly has presented prima facie evidence that it is the holder of the Beesleys' loan.  That is, DB-GSAA has submitted recorded documents indicating that: 1) a loan was made that was secured by a note and mortgage given to Argent; 2) Argent transferred the mortgage to DB-Americas; and 3) DB-Americas transferred the note and mortgage to DB-GSAA, the Plaintiff in this case.  DB-GSAA says that the original note is in its counsel's possession.  Under these circumstances, DB-GSAA demonstrates its standing to pursue rights under the note and mortgage.

The Beesleys make sweeping accusations concerning the mortgage loan industry and base their lack of standing argument on tales of bad acts unrelated to this case.  Whether other lending institutions have done bad things in other cases has no

impact here.  As the Beesleys' counsel recognized at the hearing, he is not the attorney for all people who may have been victimized by various lenders.

### B. The Beesleys Lack Standing to Assert that Voidable Contracts to Which They Were Never Parties Are Void.

The Beesleys take issue with the various transfers of their note and mortgage, arguing that, because various entities and/or persons lacked the power and authority to transfer them, DB-GSAA does not have good title entitling it to foreclose on their property.  The Beesleys argue that, before DB-GSAA may foreclose on the property, it must first prove the validity of every transfer in the chain of title.  Although this court has required lenders using the court process to foreclose to establish their standing to do so, this court has never required a lender to go back and establish that every person or entity who assigned a note and mortgage had the power to do so.  Such a requirement would prove unworkable, as it may be difficult to locate the person who executed a document dozens of years ago or worked for company that no longer exists.  Instead, the court requires a lender to establish that it is the holder of the note and mortgage it seeks to foreclose.

This court has held on numerous occasions that borrowers like the Beesleys generally lack standing to challenge the assignments of their loans.  See Benoist v. U.S. Bank Nat'l

9

Ass'n, 2012 WL 3202180, *5 (D. Haw. Aug. 3, 2012) (discussing numerous cases in which courts concluded that borrowers lack standing to challenge assignments of their loan documents, and concluding that the plaintiffs could not therefore set aside the assignment of a mortgage even when the terms of a pooling and service agreement were not followed); Au v. Republic State Mortg. Co., 2012 WL 3113147, *4 n.6 (D. Haw. July 31, 2012) (noting that borrowers who are not parties to or beneficiaries of a pooling and service agreement lack standing to challenge alleged violations of such agreements); Bank of New York Mellon v. Sakala, 2012 WL 1424655, *5 (D. Haw. Apr. 24, 2012) (same); Abubo v. Bank of New York Mellon, 2011 WL 6011787, *8 (D. Haw. Nov. 30, 2011) (same); Velasco v. Security Nat'l Mortg. Co., 823 F. Supp. 2d 1061, 1067 (D. Haw. 2011) (ruling that a borrower could not dispute the validity of an assignment of loan documents through a "slander of title" claim because the borrower was not a party to or intended beneficiary of the assignment).

The reason that debtors generally lack standing to challenge the assignments of their loan documents is because they have no interest in those assignments, and the arguments they usually make do not go to whether the assignments are void ab initio, but instead to whether the various assignments are voidable. Debtors lack standing to challenge voidable assignments; only the parties to the assignments may raise such

10

challenges.  See 29 Williston on Contracts § 74:50 (4th ed.), available at Westlaw Willstn-CN § 74:50 (updated May 2012) (noting that a debtor may not assert that an assignment is voidable because it cannot be assumed that the assignor desires the voiding of the assignment).

"A contract that is void never attains legal effect as a contract and cannot be enforced, whereas a contract that is voidable is one where one or more of the parties have the power, by the manifestation of an election to do so, to avoid the legal relations created by the contract."  17A Corpus Juris Secundum § 169, available at Westlaw CJS Contracts § 169 (updated Sept. 2012).  A contract is void when one of its essential elements is missing or when it is made in violation of law.  A party cannot consent to an agreement that violates the law.  See id. Accordingly, Hawaii courts have held that an agreement arising out of a foreclosure sale that was contrary to statute is void and unenforceable.  See Lee v. HSBC Bank USA, 121 Haw. 287, 292, 218 P.3d 775, 780 (2009).  Hawaii courts have similarly held that a contract that involves an "unfair or deceptive practice" in violation of chapter 480 of Hawaii Revised Statutes is void and unenforceable.  See 808 Dev. LLC v. Murakami, 111 Haw. 349, 357, 141 P.3d 996, 1004 (2006).  A judge of this court has held that a company in bankruptcy liquidation may not validly assign its interest in a note and mortgage to another company that would

11

thereafter seek to foreclose on property.  See Deutsche Bank Nat'l Trust Company, as Trustee Morgan Stanley ABS Capital I Inc. Trust 2007-NC-1 Mortgage Pass-Through Certs., Series 2007-NC1 v. Williams, 2012 WL 1081174, *3 (D. Haw. Mar. 29, 2012) (Seabright, J.).

On the other hand, only the parties to a voidable contract can seek avoidance of that contract.  "Only the parties to a contract may assert its nullity by virtue of a defect in consent."  17A Corpus Juris Secundum § 169, available at Westlaw CJS Contracts § 169.  Accordingly, a contract entered into by a minor or an insane person is generally voidable under Hawaii law, and the minor, upon reaching the age of majority, or the insane person, upon becoming sane, may choose to ratify or avoid the contractual obligations.  See Zen v. Koon Chan, 27 Haw. 369, 371 (1923).  Similarly, contracts induced by fraud or material misrepresentations are voidable.  See Exotics Haw.-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Haw. 277, 288, 172 P.3d 1021, 1032 (2007).  Other courts have determined that a lack of authority to enter into a contract makes the contract voidable, not void.  See Emerson Elec. Co. v. Le Carbone Lorraine, S.A., 2009 WL 313754, *1 n1 (D.N.J. Feb. 4, 2009); Perri v. United States, 53 Fed. Cl. 381, 401 (2002).

In asking this court to take judicial notice of the pooling and servicing agreement for GSAA Home Equity Trust 2006-

2, see ECF No. 43-4, and arguing that, because the terms of that document were not complied with when the loan was transferred after the cut-off date in that document, the Beesleys are challenging a voidable, not void, contract.  Not being parties to the voidable agreement, the Beesleys lack standing to argue that any transfer occurring pursuant to the agreement is invalid.  See Benoist, 2012 WL 3202180, *5; Au, 2012 WL 3113147, *4 n.6; Sakala, 2012 WL 1424655, *5; Abubo, 2011 WL 6011787, *8; Velasco, 823 F. Supp. 2d at 1067.  Only the parties to the pooling and service agreement may argue that a mortgage was not made a part of it.  If those parties agree that the mortgage is a part of the agreement even if the assignment of the mortgage fell outside its express terms, the parties essentially modify the agreement and ratify the inclusion of the mortgage.  Debtors such as the Beesleys may not assert that the parties to the pooling and servicing agreement did not properly assign the mortgage; the only evidence before the court is that the parties to the pooling and servicing agreement believe that they did so.

        The Beesleys are unpersuasive in arguing that the 2007 assignment to DB-Americas violated New York Trust Law section 7-2.4.  The Beesleys say that, under that section, any conveyance in violation of New York trust law is void.  However, the Beesleys do not demonstrate the applicability of section 7-2.4 here, as opposed to the Uniform Commercial Code.  DB-GSAA may be

13

considered the "holder" of Lisa Beesley's note because Hawaii law defines "holder" as the "person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." See Haw. Rev. Stat. § 490:1-201(b).  As the "holder" of the note, it appears to be entitled to enforce it.  See Haw. Rev. Stat. § 490: 3-301.

The action by a separate servicing agent, Saxon Mortgage Services, Inc., servicing agent for DB-Novastar, to collect loan payments in the bankruptcy proceeding does not deprive DB-GSAA of standing to enforce the loan documents in this case.  There is no evidence that that servicing entity and the owner it purportedly represented were ever on title.  Saxon may have mistakenly attempted to collect money in the bankruptcy proceeding or may have done so on behalf of the wrong entity.  At the hearing on the present motion, counsel for the Beesleys could not say whether the Beesleys were in danger of being asked to pay the same debt twice.  In any event, the bankruptcy proceeding closed in 2009.  What the Beesleys may ultimately owe on the note and mortgage does not go to whether DB-GSAA has standing to foreclose.  The amount the Beesleys actually owe can be determined at a later time, and if DB-GSAA seeks the same money claimed by and awarded to DB-Novastar in the bankruptcy proceeding, this court can at that time ensure that overpayment by the Beesleys is avoided.

Even if the Beesleys could challenge the assignments of the documents, none of the Beesleys' other arguments would persuade this court.  For example, the Beesleys question the assignment by DB-Americas of the note and mortgage to DB-GSAA, saying that Bethany Hood, of Saxon Mortgage Services, Inc., who executed the document as the attorney-in-fact for DB-Americas, is a "robosigner" who has signed documents in various capacities for different companies.  The Beesleys do not establish that DB-GSAA lacks standing to bring this action simply because Hood is, in their opinion, a "robosigner."  See Abubo v. Bank of New York Mellon, 2011 WL 6011787, *7 (D. Haw. Nov. 30, 2011) (rejecting a similar robosigner argument).  As this court noted in Tom v. GMAC Mortgage, LLC, 2011 WL 2133705, *7 (D. Haw. May 25, 2011), "People often hold positions in multiple companies."  The Beesleys do not meet their burden on this motion of establishing that Hood lacked the authority to sign the document.

Nor do the Beesleys create standing to contest the validity of the assignments by questioning the power of any person or entity making the assignments.  The August 20, 2007, assignment to DB-Americas, for example, was purportedly signed on behalf of DB-Americas by Saxon Mortgage Services, Inc.  Id.  DB-Americas appears to have appointed Saxon Mortgage Services, Inc., to be its attorney-in-fact on or about August 21, 2007, a day after the assignment.  See Limited Power of Attorney, ECF No. 61-

1. Because there is no evidence before this court indicating that a party to that assignment has sought to rescind it, any lack of authority to execute the assignment on or before August 20, 2007, appears to have been cured the next day by the power of attorney, which at least implicitly ratified the assignment.

Finally, at the hearing on the present motion, the Beesleys cited the answers to requests for admissions, arguing that DB-GSAA admitted that it is not the trustee for the GSAA Home Equity Trust 2006-2. This argument is, to say the least, confusing. DB-GSAA admitted the following: "Please admit or deny that Deutsche Bank National Trust Company is Trustee for GSAA Home Equity Trust 2006-2. Answer: Admit." See Request to Admit No. 3, ECF No. 61-1, PageID # 560.

**V.      CONCLUSION.**

For the foregoing reasons, the motion to dismiss for lack of standing is denied.

IT IS SO ORDERED.

DATED: Honolulu, October 30, 2012.



/s/ Susan Oki Mollway

Susan Oki Mollway
Chief United States District Judge

Deutsche Bank v. Beesley, et al., Civ. No. 12-00067 SOM/KMC; ORDER DENYING MOTION TO DISMISS

16